IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARVIN PROCHASKA,

                Plaintiff,

      v.

MENARD, INC.,

               Defendant.

OPINION and ORDER

10-cv-686-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The question in this case is whether defendant Menard, Inc. fired plaintiff Marvin Prochaska from his job as vice president of real estate because of plaintiff's age, in violation of the Age Discrimination in Employment Act. 29 U.S.C. § 623. Defendant has filed a motion for summary judgment under Fed. R. Civ. P. 56, in which it argues that no reasonable jury could find in plaintiff's favor. Dkt. #39. In the alternative, it argues that plaintiff's damages should be limited under the "after acquired evidence" doctrine articulated in <u>McKennon v. Nashville Banner Publication Co.</u>, 513 U.S. 352 (1995). Because I conclude that genuine issues of material fact remain with respect to both questions, Fed. R. Civ. P. 56(a), I am denying defendant's motion for summary judgment.

1

PRELIMINARY ISSUES

Before setting forth the undisputed facts, there are a number of procedural matters I must address. First, defendant has filed a motion to substitute an exhibit it filed with its motion for summary judgment. Dkt. #152. Because plaintiff does not oppose the motion, I will grant it. Second, defendant has filed motions to "strike" the testimony of Adam Ray and Debra Sands that plaintiff submitted with his summary judgment materials and a motion for leave to file a reply brief in support of the motion to strike Ray's declaration. Dkt. ##122, 148 and 157. I am denying the motions related to Ray as moot because I did not need to rely on any of his testimony in deciding the motion for summary judgment.

Defendant raises several arguments for striking Sands's testimony. First, it says that she "claims that she provided legal services to Menard from 1998 to 2006," so any information she learned about the company is protected by the attorney-client privilege. An initial problem with this argument is that defendant seems to be unwilling to concede that Sands even provided any legal services to defendant, presumably because of the litigation between defendant and Sands that defendant discusses repeatedly throughout its summary judgment submissions. Obviously, unless it is established that Sands had a lawyer-client relationship with defendant, I cannot find that she violated a privilege.

Even if I assume that Sands was employed by defendant as a lawyer and I assume that it would be appropriate to strike testimony that violated the privilege (defendant cites no

2

authority on that point), defendant has not shown that it is entitled to relief.  Sands may have been counsel for defendant, but she was John Menard's fiancée as well, so I cannot simply assume that any personal knowledge she gained in this case is attributable to her work as a lawyer for defendant.  Defendant cites no evidence that this would be the situation.  Further, as plaintiff points out, it was *defendant* who took Sands's deposition and elicited many of the answers it now wishes to strike, so it is likely that any potential privilege has been waived.

Second, defendant says that one paragraph in Sands's declaration violates a protective order from a state court lawsuit in 2009 (involving defendant and Sands's sister) that prohibited her from "comment[ing] publicly about the pending litigation."  However, defendant cites no evidence to show that the other lawsuit is "pending" and cites no authority for the proposition that the proper remedy for a violation of that order is to exclude evidence in this case rather than seek relief from the issuing court.  In any event, this argument is moot because I did not rely on the testimony in that paragraph.

Finally, defendant says that Sands's testimony is inadmissible under the Federal Rules of Evidence.  However, as the Court of Appeals for the Seventh Circuit has reminded parties on multiple occasions, a motion to "strike" is not the appropriate vehicle for raising an evidentiary objection.  E.g., Wiesmueller v. Kosobucki, 547 F.3d 740, 741 (7th Cir. 2008); Custom Vehicles, Inc. v. Forest River, Inc., 464 F.3d 725 (7th Cir. 2006); Redwood v.

3

<u>Dobson</u>, 476 F.3d 462, 470-71 (7th Cir. 2007). "If [a party] believe[s] any of the averments in [an] affidavit [a]re inadmissible, the proper response [i]s not to move to strike the affidavits themselves, but to dispute each of the facts proposed by [the other party] that relied on those affidavits, on the ground that the proposed facts [a]re not supported by admissible evidence." <u>Stocker v. Kalahari Development, LLC</u>, 2007 WL 1140246, *1 (W.D. Wis. 2007). Defendant repeated its objections in the context of its responses to plaintiff's proposed findings of fact and I considered them individually in that context.

This leads to the last procedural issue. Although the parties submitted nearly 500 proposed findings of fact, most of them were inadmissible or unhelpful. Because the problems with both sides' submissions were numerous, I will identify the most common ones so that the parties understand why so many of their proposed findings have been omitted and to help counsel prepare for any future motions they may file in this court.

The biggest problem on both sides was that counsel submitted many proposed findings of fact that lacked any probative value because they were vague or conclusory. <u>E.g.</u>, Plt.'s PFOF ¶ 28, dkt. #113 ("Mr. Prochaska's loyalty to the company was also unparalleled."); <u>id.</u> at ¶ 90 ("John Menard made several comments at this party that in retrospect Mr. Prochaska realizes were critical of his age."); Dft's PFOF ¶ 19, dkt. #56 ("Menard strictly and consistently enforces its anti-fraternization and conflict of interest policies."); <u>id.</u> at ¶ 146 ("Prochaska's leadership over his team members was 'lackluster at

4

best' and he really provided 'no oversight to the group of people at all.'").  What were these comments about plaintiff's age?  What is the evidence for the alleged "strict and consistent" enforcement of defendant's policies?  In the context of a motion for summary judgment, the parties must provide specific facts to support their positions, not conclusory allegations. Cedar Farm, Harrison County, Inc. v. Louisville Gas and Electrical Co., 658 F.3d 807, 812 (7th Cir. 2011); Hall v. Bodine Electrical Co., 276 F.3d 345, 354 (7th Cir. 2002).

Other problems plagued plaintiff's proposed findings of fact in particular.  Many lacked foundation, mischaracterized the cited evidence, included argument about the evidence, made sweeping generalizations from specific examples or consisted of long excerpts from depositions rather than a proposal of a specific fact.  E.g., Plt.'s PFOF ¶ 64, dkt. #113 ("[John Menard] also did not enjoy being around other individuals who were of his vintage, because it reminded him of his own progressing age.") (citing testimony of Debra Sands); id. at ¶ 83 ("With a complete lack of a checks-and-balances system to prevent a pattern and practice of age discrimination . . ."); id. at ¶ 84 (citing long deposition excerpt); id. at ¶ 170 ("Perhaps realizing how incredible this proffered brochure rationale was, Mr. Collette attempted to expand his asserted reason for the termination to allege a failure to have an established overall marketing plan.") (citing document prepared by defendant that includes none of these characterizations).  In addition to these problems, both sides proposed many facts that were irrelevant to the issues raised in defendant's motion for summary judgment.

E.g., Plt.'s PFOF ¶ 53, dkt. #113 (citing defendant's own deposition testimony that he "used the same bathroom" as John Menard); Dft.'s PFOF ¶ 234, dkt. #56 ("Ms. Hammersmith identified the Anti-Discrimination Policy and affirmed that Menard takes this policy very seriously.")  I have disregarded all of those facts.

Counsel is reminded that each proposed finding should relate to one discrete, specific fact that is supported directly by the cited evidence without any need for drawing inferences or making interpretations.  If the parties wish to make arguments about what the facts mean or how they support that party's position, they should do that in the briefs.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

## UNDISPUTED FACTS

Plaintiff Marvin Prochaska was born in 1948.  In 1965, while still in high school, he began working for defendant Menard, Inc., which operates a chain of home improvement retail stores throughout the Midwest.  Plaintiff started as a lumberyard foreman and was later promoted to store manager.

John Menard, then chief executive officer and owner of the company (now the president), asked plaintiff to manage and plan real estate for the entire company.  Some time in the 1970s, plaintiff received the title "vice president of real estate," which made him

responsible for site selection of the stores, among other things.  From 1972 to the present, defendant grew from four to 250 stores.

In 2002, plaintiff attempted to tender his resignation because he believed "his position and compensation had stalemated," Plt.'s PFOF ¶ 39, dkt. #113, but he decided to stay after Menard offered to double his salary, from $110,000 to $220,000.  Plaintiff was 54 years old at the time.

Charles Menard was defendant's chief operating officer from 2004 to 2007.  He did not have authority to fire anyone without John Menard's approval.  In Charles Menard's view, plaintiff had no performance problems. In 2007, Charles Menard was terminated for violating the fraternization policy, but he was rehired for a different job three months later.

Plaintiff received a $100,000 raise in 2007.  Charles Menard is not aware of anyone else at the company who received such a large raise.

In November 2007, Scott Collette became defendant's chief operating officer, which made him responsible for defendant's day-to-day operations. Defendant's organizational chart identified Collette as plaintiff's direct supervisor.  (The parties dispute whether plaintiff reported directly to John Menard in addition to Collette.)

Plaintiff has had gray hair since he was 15 or 16.  (The parties dispute whether John Menard "commented" on plaintiff's gray hair several times.  Plt.'s Dep., dkt. #28, at 83.) John Menard called plaintiff "an old fart."  After plaintiff had eye surgery, Menard said,

"that's the problem when you get old, you fall apart, you can't get the work done."

In 2007 or 2008, John Menard instructed Jeffrey Engedal, the company's merchandise manager of the hardware and seasonal departments, to demote the senior seasonal buyer because he was "too old to function in the position." Engedal Dep., dkt. #59, at 22. The senior buyer was in his late 50s at the time. On another occasion, John Menard spoke with Engedal after he had interviewed someone for a buyer position. Menard said that the applicant was "too old" and asked Engedal, "What the fuck are [you] thinking even entertaining the thought of hiring somebody that age because that's not the future." Id. at 43. (Defendant objects to these statements as inadmissible, but it does not deny that Menard made them. Because I disagree with defendant's argument regarding admissibility, I am including them in the undisputed facts.)

In August 2008, Collette gave plaintiff a performance evaluation, rating him as "exceeding expectations" or "outstanding" in all twelve categories. However, under the heading, "List an area(s) that need improvement," Collette wrote, "need to strengthen your store design leadership" and "need to improve methods of site selection." Under "strengths," Collette wrote, "Knowledge of the business" and "Great teacher!" As a goal for plaintiff, Collette wrote, "hire a demographics company within the next six months."

At the beginning of 2009, plaintiff met with John Menard, Collette and Theron Berg (one of plaintiff's subordinates in the properties division) to discuss a marketing plan for

8

getting tenants into some of defendant's properties, especially in Grand Forks, North Dakota. Menard suggested that they create a brochure to advertise free rent for tenants. Menard did not impose a specific deadline for completing the brochure.

In preparing the brochure, Berg oversaw two others, Bill Ash and Jamie Radabaugh, who were assigned the compilation of the brochure and a mass email list. Collette had "direct supervisor authority" over these employees. Plt.'s PFOF ¶ 162, dkt. #113. Two or three weeks after the meeting, plaintiff gave Collette a draft of the brochure, but Collette wanted revisions.

After a board meeting in January 2009, Collette instructed plaintiff in an email to "[a]ctively pursue distressed properties that could be turned into a 'Hall Plaza' type of Menard store. Primarily in the Chicagoland area, but other areas should be pursued as well."

On February 11, 2009, Collette forwarded an email to Menard in which plaintiff announced that he had renegotiated a lease agreement and saved the company $232,000 over a five-year period. Collette wrote in his email to Menard, "Not too bad!" In response, Menard wrote "Super!!"

On April 6, 2009, Collette sent a handwritten note to Radabaugh about the Grand Forks brochure: "Let's get this done. The real question is why it took you eleven weeks to get it done. Maybe if you would be a bit more aggressive we would sell/lease more real estate!"

9

On April 16, 2009, plaintiff flew to Indianapolis to visit properties there owned by defendant.

On April 17, 2009, Collette met with plaintiff to inform him that he was being terminated. He told plaintiff that "the corporation" decided that "a change was needed" and wanted to go in a "new direction." Collette gave him three specific reasons for the termination: (1) plaintiff's failure to give a list of distressed properties to Collette; (2) plaintiff's failure to complete in a timely manner a brochure about leasing property located in Grand Forks, North Dakota; and (3) plaintiff's lack of effort to sell property. With respect to the third concern, Collette noted that plaintiff "only took one flight to sell properties in the last four weeks." Dkt. #72.

In response to the first concern, plaintiff told Collette that he recently had given Collette a list of distressed properties, but Collette stated that the list included only four properties. Plaintiff told Collette that more properties were on the list. In response to the third concern, plaintiff pointed out that he had just returned from a trip to Indianapolis. The previous weekend, he met with "union representatives, city officials and a United States Senator to advocate for the company in its use of a piece of property in the area." Plt.'s PFOF ¶ 178, dkt. #113. Despite plaintiff's objections, he was terminated. He was 60 years old at the time.

Radabaugh was "eventually terminated." Plt.'s PFOF ¶ 168, dkt. #56. (The parties

10

do not say in their proposed findings of fact when this occurred.  They dispute whether the delay in preparing the Grand Forks brochure played a role in that decision.)  Berg and Ash did not experience any disciplinary action related to the Grand Forks brochure.

At the time plaintiff was fired, Berg was in his mid-30s, had worked at the company for seven years and had three years of management experience.  Berg told Radabaugh that he was going to be the manager of the properties division.  Berg believes that he is "generally in charge of the acquisitions and dispositions side of the properties division."  Berg Dep., dkt. #31, at 7.

In October 2009, defendant created a position description for the job title, "real estate general manager," which is Berg's job title.   Under the heading "primary responsibilities," the following items are listed:

- Oversee the acquisition, disposal and management of all Menard, Inc. real estate

- Oversee the Team of Planning, Acquisitions, Dispositions and Attorneys that make up the Properties and Store Design departments and who perform the following duties:

    - Purchase and develop a continually growing number of Menard stores, D.C.'s, Manufacturing facilities, residential and commercial projects

    - Manage over 250 existing properties [,] over 175 of which have excess properties for sale or lease

- Management of all the environmental affairs relating to the

11

      construction of all Menard property

- Negotiate within and outside the company

- Effectively train Team Members to be negotiators

This is an accurate description of plaintiff's responsibilities as vice president of real estate. (The parties dispute whether Berg performs all of these responsibilities.)

Defendant has policies against fraternization and conflicts of interest. (Neither side proposed facts about the specific content of those policies.) The policies do not require termination for those who violate the policies. They allow for discretion in setting the appropriate discipline, "depending on the severity of the offense and the individual's self-reporting." Dft.'s Resp. to Plt.'s PFOF ¶ 203, dkt. #120.

At unspecified times, plaintiff traveled to casinos with Arthur Greenburg, who had sold property to defendant through plaintiff. On "some of the trips," Greenburg paid for plaintiff's meals. Plaintiff also went to dinner at a casino with Jack Chivers, who has "completed three [business] transactions" with defendant through plaintiff.

Collette "had an affair with one of the employees he supervised at the company, and had a daughter with her – conduct which would be prohibited under these policies." Plt.'s PFOF ¶ 213, dkt. #113.

OPINION

A.  Legal Standards

1.  Causation

Before considering the evidence, I address two questions about the proper legal standard that applies to this case.  First, the parties agree that plaintiff must prove that age was the "but for" cause of his termination.  Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343 (2009).  In other words, "[t]he plaintiff must prove that, but for his age, the adverse action would not have occurred."  Martino v. MCI Communications Services, Inc., 574 F.3d 447, 455 (7th Cir. 2009).

The parties disagree about what that standard means in practice.  In particular, defendant says that plaintiff is wrong to argue that he "need not prove  that the employer was motivated by age alone . . . it is enough that age was a 'determining factor' in the adverse action."  Dft.'s Br., dkt. #117, at 26-27.  According to defendant, the case plaintiff cites for the "determining factor" standard, Anderson v.Stauffer Chem. Co., 965 F.2d 397, 400 (7th Cir. 1992), was superseded by Gross because the Court rejected that standard.

I agree with plaintiff that "but for" does not mean "solely"; a plaintiff does not need to show that age was the only reason for the adverse employment action.   As the Court of Appeals for the Seventh Circuit explained recently, Greene v. Doruff, 660 F.3d 975, 979 (7th Cir. 2011), the phrase "but for" is simply another way of saying that a particular reason

13

is a "necessary condition" of an event.  In <u>Gehring v. Case Corp.</u>, 43 F.3d 340, 344 (7th Cir. 1994), the court described the relevant question as follows: "whether the employer would have fired . . . the employee if the employee had been younger than 40 and everything else had remained the same."  This standard leaves room for other motivating factors, so long as the employee's age is what tipped the scales in favor of termination.

Thus, "but for" and "determining factor" are the same standard, as was recognized by the court in <u>Anderson</u>.  <u>See also</u> <u>Brown v. M & M/Mars</u>, 883 F.2d 505, 507 (7th Cir. 1989) ("[A] plaintiff must prove that age was a determining factor in, or, in other words, a 'but for' cause of an adverse employment decision.").  Defendant is wrong to argue that the Supreme Court suggested otherwise in <u>Gross</u>.  Although it is true that the Court reversed a decision by the Court of Appeals for the Eighth Circuit that used the phrase "determining factor" as part of its standard, the Supreme Court's decision had nothing to do with that phrase.  Rather, the Supreme Court was reviewing the lower court's decision that it may be appropriate under some circumstances to shift the burden of persuasion to the defendant in cases brought under the ADEA.  <u>Gross</u>, 129 S. Ct. at 2348.  In fact, in discussing the proper standard in <u>Gross</u>, the Court quoted with approval the statement in <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604 (1993), that an ADEA claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decisionmaking] process and had *a determinative influence* on the outcome."  <u>Id.</u> at 610 (emphasis added).  To the extent <u>Gross</u>

14

left any doubt, the issue was resolved in <u>Lindsey v. Walgreen Co.</u>, 615 F.3d 873, 876 (7th Cir. 2010), in which the court read <u>Gross</u> as applying the following standard: "To establish liability under the ADEA, however, Lindsey had to show that her age was the determinative factor."

2.  <u>Evidentiary framework under the indirect method</u>

The second question relates to the appropriate evidentiary framework for determining whether a plaintiff has met his burden of proof in the context of a motion for summary judgment. The parties agree that what is now called "the indirect method" is one way that plaintiff can meet that burden. <u>Van Antwerp v. City of Peoria, Illinois</u>, 627 F.3d 295, 297 (7th Cir. 2010).  In general, this method requires a plaintiff to establish a "prima facie case," after which the burden of production (but not the burden of persuasion) shifts to the employer to articulate its nondiscriminatory reason or reasons for firing the plaintiff or taking another adverse action.  At that point, the plaintiff must come forward with evidence that the defendant's reasons are pretextual.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).

The parties dispute the proper formulation of the "prima facie case," which generally has four parts.  They agree on what the first three elements require plaintiff to show:  he is a member of a protected class, he was meeting his employer's legitimate expectations when

he was fired and he suffered an adverse employment action.  <u>E.g.</u>, <u>Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 627 F.3d 596, 599 (7th Cir. 2010); <u>Tubergen v. St. Vincent Hospital and Health Care Center, Inc.</u>, 517 F.3d 470, 475 (7th Cir. 2008); <u>Kralman v. Illinois Dept. of Veterans' Affairs</u>, 23 F.3d 150, 153 (7th Cir. 1994).  In addition, there is no dispute that plaintiff is protected under the ADEA because he is older than 40, 29 U.S.C. § 631(a), and that his termination qualifies as an adverse employment action.  <u>Lucero v. Nettle Creek School Corp.</u>, 566 F.3d 720, 730 (7th Cir. 2009).  The parties dispute whether plaintiff was meeting defendant's legitimate expectations, but I can set that issue aside for the moment. Because defendant says it fired plaintiff for poor performance, this aspect of the prima facie case merges with question of pretext.  <u>Hague v. Thompson Distribution Co.</u>, 436 F.3d 816, 823 (7th Cir. 2006) ("[I]f the plaintiffs argue that they have performed satisfactorily and the employer is lying about the business expectations required for the position, the second prong and the pretext question seemingly merge because the issue is the same-whether the employer is lying.").

With respect to the fourth prong, defendant says that plaintiff is required to show that he was treated less favorably than similarly situated, younger employees, Dft.'s Br., dkt. #55, at 7; plaintiff says that he must show only that he was replaced by a younger worker. Plt.'s Br., dkt. #69, at 35-36.  Both sides cite case law applying their version of the test. <u>Compare</u> <u>Martino</u>, 574 F.3d at 453 (fourth prong is that "the company treated similarly

situated employees under 40 more favorably") with Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1178 (7th Cir. 1997) (fourth prong is that plaintiff was "replaced by a much younger person"). In addition, plaintiff cites Pantoja v. American NTN Bearing Manufacturing Corp., 495 F.3d 840, 846 (7th Cir. 2007), in which the court stated that the fourth prong was that the plaintiff's "employer sought someone to perform the same work after he left."

Which standard is appropriate in this case? Because plaintiff does not argue that he can satisfy defendant's version of the prima facie case, I must determine whether plaintiff can prevail by showing that he was placed by a substantially younger worker. It seems that most often the court of appeals applies defendant's version of the test without explaining why or even noting that other versions exist. E.g., Everroad v. Scott Truck Systems, Inc., 604 F.3d 471, 478 (7th Cir. 2010); Patterson v. Indiana Newspapers, Inc., 589 F.3d 357, 364 (7th Cir. 2009); Senske v. Sybase, Inc., 588 F.3d 501, 506 (7th Cir. 2009); Faas v. Sears, Roebuck & Co., 532 F.3d 633, 641 (7th Cir. 2008); Atanus v. Perry, 520 F.3d 662, 672 (7th Cir. 2008). However, in Pantoja, 495 F.3d 840, the court acknowledged that a plaintiff's prima facie case has been articulated in different ways over the years. Id. at 845 ("[T]here has been a subtle evolution in the way that courts describe the . . . requirements for a prima facie case of discrimination, at least when the adverse action at issue is the employee's termination."). In choosing a less stringent formulation in that case, the court of appeals stated that the Supreme Court has "warned against an unduly rigid approach" in

17

applying the indirect method.  Id. at 845-46.  See also Swierkiewicz v. Sorema N. A., 534
U.S. 506, 512 (2002) ("[T]he prima facie case operates as a flexible evidentiary standard.");
Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978) ("The [indirect] method
. . . was never intended to be rigid, mechanized, or ritualistic.  Rather, it is merely a sensible,
orderly way to evaluate the evidence in light of common experience as it bears on the critical
question of discrimination.").  However, it is not clear whether the court of appeals intended
to jettison the "similarly situated" requirement as a general matter or just under the facts of
that particular case.  Particularly because the court of appeals has applied this requirement
(without discussion) several times since Pantoja, it is difficult to glean a rule from that case.

In light of the uncertainty of this circuit's law, I conclude that it is appropriate to look
to the Supreme Court for guidance.  In Reeves v. Sanderson Plumbing Products, Inc., 530
U.S. 133, 142 (2000), the last case in which the Court considered the application of the
indirect method in an age discrimination case, the Court concluded that the plaintiff
satisfied the fourth prong with evidence that the employer "successively hired three persons
in their  thirties to fill petitioner's position."  Similarly, in O'Connor v. Consolidated Coin
Caterers Corp., 517 U.S. 308, 313 (1996), the Court stated that the plaintiff in an age
discrimination case may satisfy the fourth prong with evidence that "a replacement is
substantially younger than the plaintiff."  Like this case, Reeves and O'Connor involved
plaintiffs who had been fired from their jobs.

18

It does not seem that the Court *ever* has articulated a version of the prima facie case for proving discrimination of any kind that requires the plaintiff to show that he was treated less favorably than "similarly situated" employees outside his group. E.g., U.S. Postal Service Bd. of Governors v. Aikens, 453 U.S. 902, 904 (1981) (in failure to promote case, fourth prong satisfied because "white Post Office employees received the positions" to which plaintiff, a black man, applied); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981) (in failure to promote case, fourth prong satisfied because female plaintiff "was rejected in favor of a male, Walz, who had been under her supervision"). The closest it has come to this is to say that a plaintiff may satisfy the fourth prong in a failure to hire case with evidence that the defendant continued to seek applications from "persons of similar qualifications" after rejecting the plaintiff's application. Furnco, 438 U.S. at 576 (in failure to hire case, fourth prong satisfied because "the employer continued to seek after rejecting plaintiff"). See also McDonnell Douglas, 411 U.S. at 802 (in failure to hire case, plaintiff may meet fourth prong by showing that "after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications").

Some of the earlier cases in this circuit including a "similarly situated" requirement in the prima facie case cite McDonald v. Santa Fe Trail Transportation Co. , 427 U.S. 273, 285 (1976), as authority. E.g., Timms v. Frank, 953 F.2d 281, 286 (7th Cir. 1992).

19

Although the Court in <u>McDonald</u> emphasized that a plaintiff could prove his discrimination claim with evidence that similarly situated employees received better treatment, the Court did not say that such evidence was part of a plaintiff's prima facie case.  In fact, the Court did not even discuss the prima facie case in <u>McDonald</u>.  In another early case, <u>Coates v. Johnson & Johnson</u>, 756 F.2d 524, 531 (7th Cir. 1985), the court cited <u>Burdine</u>, 450 U.S. at 254, but it is not clear why because <u>Burdine</u> does not include a "similarly situated" requirement as part of the prima facie case.

The version of the prima facie case used in <u>Reeves</u> and <u>O'Connor</u>, both of which involved a termination, is consistent with plaintiff's argument that the fourth prong may be satisfied in this case with evidence that plaintiff was replaced by a substantially younger worker.  Further, as a general matter, including a "similarly situated" requirement in the prima facie case seems to render pointless the evidentiary framework of the indirect method.  That is, if a plaintiff must show as part of his prima facie case that similarly situated employees outside his group were treated more favorably, what more could be required to show pretext?  Whatever the employer's asserted nondiscriminatory reason is, that explanation is called into question if the employer did not apply it even handedly to similarly situated employees.  <u>E.g.</u>, <u>Curry v. Menard, Inc.</u>, 270 F.3d 473, 479 (7th Cir. 2001) (relying on uneven application of disciplinary policy as evidence of pretext); <u>Gordon v. United Airlines, Inc.</u>, 246 F.3d 878, 892 (7th Cir. 2001) ("A showing that similarly situated

20

employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, nondiscriminatory reason for the adverse job action was a pretext for racial discrimination.").

This makes sense because "[t]he critical issue [in a discrimination case] is whether members of one [protected group] are exposed to disadvantageous terms or conditions of employment to which members of [an]other [group] are not exposed." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998). Thus, if a plaintiff can show that other employees without relevant differences (other than the protected characteristic) received better treatment than he did, there is nothing left to prove. Burdine, 450 U.S. at 258-59 ("[T]he plaintiff's task [in a discrimination case] is to demonstrate that similarly situated employees were not treated equally."); Filar v. Board of Education of City of Chicago, 526 F.3d 1054, 1061 (7th Cir. 2008) ("All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination."); cf. City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (equal protection clause requires that "all persons similarly situated should be treated alike"). By importing a "similarly situated" requirement into the prima facie case, courts make the pretext inquiry redundant and require the plaintiff to prove the ultimate issue in what is supposed to be only one element of a larger framework.

In Burdine, 450 U.S. at 253, the Court stated that "[t]he burden of establishing a

prima facie case of disparate treatment is not onerous." That statement cannot be reconciled with a test that front loads the plaintiff's entire burden into the prima facie case.

In <u>McDonnell Douglas</u>, 411 U.S. at 801, the first case in which the Court applied the indirect method of proof, the employer alleged that it refused to rehire a former employee who was black because he had engaged in illegal activity. The Court concluded that it was relevant whether the employer had rehired white employees who engaged in misconduct of "comparable seriousness," but this was in the context of determining whether the employer's stated reason was pretextual, *not* in the context of evaluating the plaintiff's prima facie case. <u>Id.</u> at 804 ("Especially relevant to such a showing [of pretext] would be evidence that white employees involved in acts against petitioner of comparable seriousness to the 'stall-in' were nevertheless retained or rehired."). Even then, the Court stated that there may be other ways of showing pretext. <u>Id.</u>

These cases seem to make it clear that the Supreme Court never intended the prima facie case to include a requirement in all cases that "similarly situated" employees were treated differently. Accordingly, in this case, I will adopt the formulation of the prima facie case from <u>Reeves</u> and <u>O'Connor</u>, which is whether plaintiff was replaced by a substantially younger worker.

B.  Evidence of Discrimination

1.  Indirect method

Plaintiff says that he was replaced by Theron Berg, a man in his 30s.  Although there is no dispute that Berg is "substantially younger" than plaintiff, Nagle v. Village of Calumet Park, 554 F.3d 1106, 1118 (7th Cir. 2009) ("substantially younger" generally means more than 10 years), defendant denies that Berg "replaced" him.  However, plaintiff has adduced evidence that Berg himself said that he was taking over the properties division, Radabaugh Dep., dkt. #38, at 42-44, and plaintiff submitted a position description defendant created after he left the company for "Real Estate General Manager," which is Berg's title.  It is undisputed that the document provides an accurate description of plaintiff's former responsibilities.

Further, defendant does not deny that Berg took over many of plaintiff's responsibilities; it identifies no one else as plaintiff's replacement; and it does not suggest that the work simply is not being done anymore.  Merillat v. Metal Spinners, Inc., 470 F.3d 685, 691-92 (7th Cir. 2006) ("When an employee in a unique position is terminated and her position is not filled, but employees outside the protected class assume the fired employee's responsibilities, the employer has effectively replaced the employee. "); Filar, 526 F.3d at 1060-61 ("[R]etention of younger employees who take on the dismissed employee's responsibilities is nothing more than a demonstration of more favorable treatment.").

23

Although defendant says that Collette is now "running" the real estate department, Dft.'s PFOF ¶ 92, dkt. #56, it does not identify a single responsibility that Collette inherited from plaintiff.  That is enough to raise a genuine issue of material fact on this question.

Next, I turn to the reasons defendant has articulated for firing plaintiff.  At the time, Collette gave three:  (1) plaintiff's failure to give a list of distressed properties to Collette; (2) plaintiff's failure to complete in a timely manner a brochure about leasing property located in Grand Forks, North Dakota; and (3) plaintiff's lack of effort to sell property and, in particular, his failure to travel in order to do it.  Defendant stands by each of these reasons now, so it has satisfied its burden to articulate a nondiscriminatory reason for plaintiff's termination.  Accordingly, the remaining question is whether plaintiff has adduced sufficient evidence to show that these reasons are pretextual.  I conclude that he has.

The veracity of defendant's stated reasons is called into question because all of them seemed to come from nowhere, at least under plaintiff's version of the facts, which I must accept as true for the purpose of summary judgment.  Loudermilk v. Best Pallet Co., LLC, 636 F.3d 312, 314-15 (7th Cir. 2011).  It is undisputed that plaintiff received a $100,000 raise in 2007 and a performance evaluation in 2008 in which he was rated as "exceeding expectations" or "outstanding" in each category.  Although Collette noted in the evaluation that plaintiff needed to "strengthen [his] store design leadership" and "improve methods of site selection," these were not among the reasons that defendant cited when it fired plaintiff.

Defendant tries to rely on these reasons in its summary judgment submissions, but its shifting explanations are simply another ground for finding pretext.  Chaney v. Plainfield Healthcare Center, 612 F.3d 908, 916 (7th Cir. 2010) ("A shifting justification for an employment action can itself be circumstantial evidence of an unlawful motive.").

Defendant challenges the importance of the raise and the 2008 evaluation, citing various cases for the proposition that past performance is not relevant, only the employee's performance at the time he was fired.  However, these cases are distinguishable because each of them involved situations in which the employee had received more recent negative feedback before being terminated or the employee had a much shorter history with the company.  Roberts v. Separators, Inc., 172 F.3d 448, 453 (7th Cir. 1999) (previous performance review not probative because plaintiff received it only two months after he started job); Fortier v. Ameritech Mobile Communications, Inc., 161 F.3d 1106, 1113 (7th Cir. 1998) (positive evaluation followed by more recent negative evaluation, new supervisor and new responsibilities); Rand v. CF Industries, Inc., 42 F.3d 1139, 1146 (7th Cir. 1994) (plaintiff fired "after a series of negative reports had accumulated during that year"); Karazanos v. Navistar International Transportation Corp., 948 F.2d 332, 336 (7th Cir. 1991) (plaintiff put on probation and received poor evaluation before being fired).  See also Senske v. Sybase, Inc., 588 F.3d 501, 507 (7th Cir. 2009) (previous positive review not evidence of pretext because it was "anomalous" and performance was otherwise consistently

25

deficient).

In this case, plaintiff's 2008 evaluation was the last evaluation of his work that he received. Merillat, 470 F.3d at 691-92 (material issues of fact remained on question whether plaintiff was meeting employer's legitimate expectations because most recent evaluation was largely positive). Defendant points to no documentary evidence showing that Collette, John Menard or anyone else had problems with plaintiff's performance after the 2008 evaluation and they point to no warnings that anyone gave plaintiff to suggest his job was in jeopardy. Particularly in light of plaintiff had a 40 year history with the company, it is surprising that plaintiff went from "outstanding" to unemployed over the course of a few months. Valentino v. Village of South Chicago Heights, 575 F.3d 664, 673-74 (7th Cir. 2009) (summary judgment inappropriate when "termination occurred without warning after nearly fifteen years of uninterrupted service"); Peirick v. Indiana University-Purdue University Indianapolis Athletics Dept., 510 F.3d 681, 692 (7th Cir. 2007) (defendant's failure to warn plaintiff of problems or identify problems before termination is evidence of pretext).

Defendant includes one proposed finding of fact that Collette gave plaintiff a "stern message" "many times" regarding the need to finish the brochure, Dft.'s PFOF ¶ 139, dkt. #56, but this testimony is so vague as to the content and timing of the "message" that it is questionable whether it is even admissible. In any event, plaintiff disputes this proposed finding of fact, so I cannot rely on it for the purpose of summary judgment.

26

Defendant relies on many proposed findings of fact based on testimony from John Menard regarding "concerns" he had about plaintiff's performance and conversations he had with plaintiff about those concerns. Dft.'s PFOF ¶¶ 77-79, 94-100, 102-105, 108-112, dkt. #56. This evidence does not help defendant for several reasons. First, defendant denies that John Menard had any involvement in the decision to fire plaintiff or even knowledge of it before it happened, so this testimony is either irrelevant or it undermines Menard's professed ignorance. Second, even if Menard's opinions are relevant, some of the testimony raises more questions than it answers. For example, Menard testified that plaintiff was a "difficult" employee with "erratic" performance during his entire 40 year tenure. Menard Dep., dkt. #63, at 11-12. He did not cite specific examples. In response to this testimony, counsel asked the obvious question: if plaintiff was so difficult, why did he last 40 years (and why did he receive multiple, significant raises)? Menard's answer was, "That's a good question . . . one that I don't have the answer to." Id. That testimony helps plaintiff more than defendant.

Third, I cannot rely on Menard's "concerns" with plaintiff's performance that were never reduced to writing or communicated to plaintiff. Although defendant cites vague testimony that Menard had "frequent and ongoing" conversations with plaintiff about some of his concerns, plaintiff denies that any such conversations occurred.

Alternatively, defendant argues that the raise plaintiff received in 2007 precludes a

27

finding of animus against older workers.  That is, if defendant disliked older workers, it would not have given such a large raise to a 58-year-old man. That is a valid point, but it is better made to the jury.

The task for this court is to determine whether plaintiff has adduced sufficient evidence to show that defendant's stated reasons are pretextual, not to determine whether its decision is consistent with previous actions.  Although the court of appeals has noted that it may be "unlikely for a person to suddenly develop a strong bias against older folks," Martino, 574 F.3d at 454-55, both the Supreme Court and the court of appeals have counseled against relying on psychological assumptions such as this in the context of a motion for summary judgment or judgment as a matter of law.  E.g., Reeves, 530 U.S. at 153 (fact "that respondent employed many managers over age 50—although relevant, is certainly not dispositive"); Stinnett v. City of Chicago, 630 F.3d 645, 649 (7th Cir. 2011) (declining to draw inference against plaintiff simply because both he and decision maker were black); Filar, 526 F.3d at 1065 (in age discrimination case, rejecting argument that defendant was entitled to inference of nondiscrimination simply because same decision maker hired and fired plaintiff).  In Petts v. Rockledge Furniture LLC, 534 F.3d 715, 724-25 (7th Cir. 2008), the court stated explicitly that reliance on these assumptions "to carry a moving party over the summary judgment hurdle seems to go too far" because it requires the court to draw inferences in favor of the party moving for summary judgment, which generally is

inappropriate.  Accordingly, I decline to draw the inference requested by defendant.

If I look at defendant's stated reasons individually, there are additional grounds for disbelieving them.  With respect to plaintiff's alleged failure to give Collette "a list of distressed properties," it is undisputed that plaintiff *did* give Collette a list and reminded him of this before plaintiff was terminated. Marion County Coroner's Office v. EEOC, 612 F.3d 924, 929 (7th Cir. 2010) ("An employee may demonstrate that his employer's reason was pretextual by showing that the reason had no basis in fact.").  Collette then modified his statement to say that the list only had four properties on it, but that is not persuasive for two reasons.  First, defendant points to no evidence that Collette ever communicated an expectation to plaintiff that he needed to generate a list of a particular size.  In fact, plaintiff provided the only evidence that Collette had *any* expectation regarding distressed properties, an email in January 2009 in which Collette instructed plaintiff to "[a]ctively pursue distressed properties that could be turned into a 'Hall Plaza' type of Menard store.  Primarily in the Chicagoland area, but other areas should be pursued as well."  Plaintiff generated a list in response to that instruction.  Second, plaintiff says that his list *did* have more than four properties on it, so that issue is disputed.  (Neither side submitted the list.)

With respect to the delay in preparing a brochure, plaintiff was only one member of a team responsible for preparing it, yet he was the only person disciplined for the delay. Peirick, 510 F.3d at 689 ("The central question for our review, then, is whether Peirick and

her colleagues engaged in similar misconduct, but received dissimilar treatment. . . . Comparable seriousness may be shown by pointing to a violation of the same company rule, or to conduct of similar nature."). Although Radabaugh was terminated at some point (the parties do not identify when in their proposed findings of fact), it is disputed whether his termination had anything to do with that project.

Defendant suggests that plaintiff was not similarly situated to the other team members because he had more responsibility over the project. However, if this is true, why did Collette send an email to Radabaugh rather than plaintiff when Collette questioned the amount of time the brochure was taking? Further, even if plaintiff was viewed as the leader of the project, this would justify greater discipline against plaintiff, but it would not necessarily explain why the other team members suffered no disciplinary consequences at all. With respect to Berg in particular, he escaped discipline *and* received at least some of plaintiff's responsibilities after plaintiff was fired. If poor leadership was defendant's concern, then why did it promote someone who had the same alleged failing as plaintiff?

An employer cannot avoid a trial simply by listing any and all differences that may exist between two employees; the question is whether they are similar "in all material respects," Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002), which depends on the context of each case. Defendant does not suggest that it has a general policy of overlooking the deficiencies of subordinates. Eaton v. Indiana Dept. of Corrections, 657

30

F.3d 551, 559 (7th Cir. 2011) ("A characteristic that distinguishes two employees, regardless of its significance when objectively considered, does not render the employees non-comparable if the employer never considered that characteristic."). A reasonable jury could find that any differences in job titles or degree of responsibility do not adequately explain why defendant fired one employee without notice, but took no action against anyone else on the project. (Plaintiff does not point to younger employees who had performance deficiencies similar to Collette's other two reasons for firing plaintiff, which may be why he did not argue that he could satisfy his prima facie case with evidence that similarly situated, younger employees received more favorable treatment.)

Finally, I note that none of the reasons Collette cited suggest that plaintiff had wide-ranging or long term performance deficiencies. Rather, each one involved a specific, isolated problem: a delay in completing one project, the failure to travel to sell property "in the last four weeks" and the failure to generate one list. Of course, an employer may terminate an employee for any reason it wishes, no matter how foolish or unfair that reason is, so long as it is not one of the reasons prohibited by law. Forrester v. Rauland-Borg Corp., 453 F.3d 416, 419 (7th Cir. 2006). However, in evaluating whether an employment decision may be pretextual, courts may consider its objective reasonableness and whether one ordinarily would expect the reasons the employer gave to prompt the decision. Duncan v. Fleetwood Motor Homes of Indiana, Inc., 518 F.3d 486, 492 (7th Cir. 2008); Forrester, 453 F.3d at

418. Obviously, it is less suspicious to fire an employee for punching a coworker than for stealing a pencil, even though both reasons are equally permissible under the law. Particularly because of plaintiff's long history with the company and the lack of evidence that he had performance deficiencies in the past, it is surprising that defendant would reach such a quick conclusion that plaintiff should be fired without giving him an opportunity to improve.

## 2. Direct method

A second way that an employee may prove his discrimination case is through circumstantial evidence that "point[s] directly to a discriminatory reason for the employer's action," Adams v. Wal–Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003), such as statements evincing a discriminatory attitude toward the plaintiff or others in his protected group. Troupe v. May Dept. Stores Co., 20 F.3d 734, 737 (7th Cir. 1994). Because I have concluded that plaintiff has succeeded under the indirect method, it is unnecessary to decide whether plaintiff's evidence under the direct method would be sufficient on its own to defeat defendant's motion for summary judgment. However, to clarify the issues for trial, I will address one dispute that is a focus of the parties' briefs.

In support of his case under the direct method, plaintiff points to alleged statements by John Menard commenting on plaintiff's gray hair, calling him "an old fart" and saying

32

"That's the problem when you get old, you fall apart, you can't get the work done" after plaintiff had surgery.  In addition, plaintiff points to alleged statements by Menard that particular applicants in their 50s were "too old to function in the position;" Menard asked the interviewer, "what the fuck are [you] thinking even entertaining the thought of hiring somebody that age because that's not the future."  (Plaintiff also cites testimony of various witnesses regarding their opinions of Menard's attitude toward older workers, but most of that seems to be inadmissible for the reasons described in Visser v. Packer Engineering Associates, Inc.,  924 F.2d 655, 659 (7th Cir. 1991).)

Defendant objects to any reliance on these statements for two reasons.  First, defendant says that John Menard's attitude toward older workers is irrelevant because he was not involved in the decision to fire plaintiff.  However, I agree with plaintiff that a reasonable jury could find otherwise.

To begin with, it does not require a huge inferential leap to believe that the president of the company would have some input into the termination decision of a member of upper management who had been employed with the company for 40 years.  Further, Collette's predecessor as COO, Charles Menard, testified that he did not have authority to fire anyone without John Menard's approval and defendant does not point to any policy changes it made when Collette became COO in 2007. Although Charles Menard testified that he "would imagine" that Collette has "greater freedom for those type of decisions" and that he "would

33

not be surprised" if Collette was making termination decisions without John Menard's approval, he did not lay any foundation for his belief. One's imagination is not admissible evidence. Rand, 42 F.3d at 1146 ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors.").

Defendant's second objection is that plaintiff does not allege that John Menard made these statements in the context of the decision to fire plaintiff. Defendant is correct that the court of appeals has stated on numerous occasions that a plaintiff cannot prove his case with "stray remarks" or "isolated comments" unless a decision maker made them "around the time of the decision" and "in reference to the adverse employment action." E.g., Petts, 534 F.3d at 721. However, these cases are best read to mean that discriminatory remarks must meet that standard when the plaintiff has no other evidence. It does not mean that other statements are irrelevant or otherwise inadmissible.

This reading is the only one that reconciles cases like Petts with cases like Nagle v. Village of Calumet Park, 554 F.3d 1106, 1115 (7th Cir. 2009), in which the court of appeals stated that courts "must consider evidence of discriminatory remarks, despite being attenuated from the adverse employment action, in conjunction with all of the other evidence of discrimination to determine whether the plaintiff's claim can survive summary judgment." See also Reeves, 530 U.S. at 152-53 (criticizing lower court for discounting age-related comments that "were not made in the direct context of Reeves's termination.");

34

Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC, 464 F.3d 659, 666 (7th Cir. 2006) ("how recent the comments were, how extreme, and who made the remarks are pieces of evidence that inform whether there was a 'mosaic of discrimination.'"); Lust v. Sealy, Inc., 277 F. Supp. 2d 973, 984 (W.D. Wis. 2003) ("[E]ven comments not made 'in temporal proximity to the employment action' or 'in reference to that action' may be probative of discrimination, though, standing alone, they are insufficient to prove the plaintiff's case or even to shift the burden of persuasion to the defendant.").

Accordingly, I conclude that these statements cannot be excluded simply because they are not directly related to the employment decision at issue. "Of course, the older and more tangentially related the comment is, the less probative value it has. . . But this is generally an issue that goes to the weight and not the admissibility of the evidence. " Lust, 277 F. Supp. 2d at 984. Defendant is free to argue to the jury that it should not consider the statements because they are too old and unrelated to plaintiff's termination.

## C. After-Acquired Evidence

In the course of litigating an employment discrimination case, an employer may discover new information about the plaintiff showing that he violated work rules or otherwise had deficiencies in his work that were unknown to the employer before the lawsuit. This is called "after-acquired evidence" in the case law. McKennon v. Nashville

Banner Publication Co., 513 U.S. 352 (1995).  Such evidence "does not bar all relief, although it can limit recoverable damages."  Rooney v. Koch Air, LLC,  410 F.3d 376, 382 (7th Cir. 2005). In particular, the plaintiff may not be entitled to reinstatement or front pay if the defendant can show that "the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."  McKennon, 513 U.S. at 362-63.

In this case, defendant says that it discovered evidence that plaintiff violated its policies against fraternization and conflicts of interest by taking vacations that involved gambling with business associates and allowing those associates to pay for his meals. (Defendant does not say when these events occurred, but I will assume for the purpose of this motion that plaintiff was still defendant's employee at the time.)  In addition, defendant says that plaintiff "neglected his responsibilities with respect to construction bonds," which cost the company more than $200,000.  Dft.'s Br., dkt. #55, at 25, 30-31.

Of course, defendant did not fire plaintiff for these reasons, so answering the question whether defendant "would have" fired him necessarily requires one to speculate. Defendant says now that it would have, but that is easy for it to say in the context of a lawsuit in which it is trying to minimize its damages.

As easy as it is for the employer to take that position, it is just as difficult for the former employee to rebut it.  The Supreme Court has recognized the challenge for a plaintiff

in proving an employer's intent in making an employment decision that actually happened. Aikens, 460 U.S. at 716 ("[T]he question facing triers of fact in discrimination cases is both sensitive and difficult" because "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes.").  See also Village of San Jose v. McWilliams, 284 F.3d 785, 791 (7th Cir. 2002) ("[I]ntent is difficult to prove.")  Trying to prove intent regarding an event that never occurred is that much harder.

Because so much speculation is required in considering an after-acquired evidence defense, it will be the rare case that an employer will be able to show as a matter of law that it is entitled to the defense.  This is not one of those rare cases.

For one thing, defendant's argument on this issue is conclusory and undeveloped.  It fails to explain in either of its briefs or its proposed findings of fact how plaintiff "neglected his responsibilities" regarding the construction bonds and it does not even identify the specific language of the policies that plaintiff allegedly violated.  That is reason enough to deny defendant's summary judgment motion with respect to this issue.

Further, defendant cites little other than its own say-so to prove that it would have fired plaintiff for either of these issues.  In its brief, defendant relies on the fact that it fired Charles Menard for violating the fraternization policy and it says in its proposed findings of fact that it has fired many others, but it does not discuss the specific conduct at issue in any of these cases.  Because defendant admits that it retains discretion to overlook violations

37

of the policy, defendant's decision regarding these other employees is not dispositive without facts showing that the violations were comparable to plaintiff's.  In fact, plaintiff cites an arguably more serious violation of the fraternization policy by Collette himself, which did not lead to any disciplinary action.  Even if I assume that Charles Menard was fired for conduct similar to plaintiff's, defendant's reliance on its treatment of Charles Menard is disingenuous because it fails to acknowledge in its brief that it rehired Menard three months after he was fired.  For all of these reasons, summary judgment is inappropriate.


ORDER

IT IS ORDERED that

1.  Defendant Menard, Inc.'s motion to substitute exhibit no. 2 to Thomas Berg's affidavit, dkt #152, is GRANTED.

2.  Defendant's motion to strike Adam Ray's declaration, dkt. #122, and defendant's motion for leave to file a reply brief in support of that motion, dkt. #148, are DENIED as unnecessary.

3.  Defendant's motion to strike the testimony of Debra Sands, dkt. #157, is DENIED.

4.  Defendant's motion for summary judgment, dkt. #39, is DENIED.

Entered this 19th day of December, 2011.

                              BY THE COURT:
                              /s/
                              BARBARA B. CRABB
                              District Judge